UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,
Plaintiff,

v.

SOFONZIA MACK,
Defendant.

**REPORT AND RECOMMENDATION**
**17-cr-6159-EAW-JWF**

## Relevant Background

On November 29, 2018, this Court issued a Report and Recommendation in this case which denied in part and granted in part Sofonzia Mack's (hereinafter "Mack" or "defendant") motion to suppress evidence obtained from him by law enforcement officers on March 28, 2017. See Docket # 48. In my Report and Recommendation, I determined that the traffic stop of the minivan Mack was a passenger in was supported by probable cause and law enforcement acted properly when directing Mack to exit the vehicle during the traffic stop. I also determined that the subsequent frisk and seizure of a handgun from Mack's person by law enforcement violated Arizona v. Johnson, 555 U.S. 323, 327 (2009), because the arresting officers conceded that they had no reasonable suspicion at the time of the frisk that Mack was "armed and dangerous". See Docket # 48 at 16-17. Nevertheless, based on the inevitable discovery doctrine, I found that the firearm would have certainly been found and seized in a search incident to Mack's arrest after police located marijuana in the vehicle. Id. at 19-20.

There was, however, one issue the Court requested additional briefing on. In United States v. Santillan, the Second Circuit made clear that while illegally seized evidence may be admissible, it does not follow that a defendant's statements about that evidence are necessarily admissible. United States v. Santillan, 902 F.3d 49, 60 (2d Cir. 2018). Even voluntary statements made pursuant to an illegal search may be suppressed as fruit of the poisonous tree. United States v. Bailey, 743 F.3d 322, 341 (2d Cir. 2014). "The burden of proving that the statements were sufficiently attenuated to remove the taint from the unlawful search is on the government." United States v. Guzman, 724 F. Supp. 2d 434, 444 (S.D.N.Y. 2010).

Because this issue was not addressed by the parties, the Court requested additional briefing on whether the statements Mack made at the Public Safety Building ("PSB") should be suppressed as fruit of an illegal pat-frisk during defendant Mack's traffic stop. The parties submitted their briefs on December 21, 2018. See Docket ## 49, 50.

**Discussion[1]**

In Wong Sun v. United States, 371 U.S. 471 (1963), the Supreme Court held that evidence seized after an illegal search is subject

[1] For purposes of this supplemental Report and Recommendation, familiarity with the facts adduced at the suppression hearing and set forth in the primary Report and Recommendation are assumed.

to suppression as the so called "fruit of the poisonous tree" unless the government can demonstrate that obtaining the evidence resulted from "an intervening independent act of free will" sufficient to "purge the primary taint" of the unlawful search. Id. at 486.

Of the various fruits present on the poisonous tree, perhaps the most easily identifiable is a confession resulting from an illegal search. Oregon v. Elstad, 470 U.S. 298, 306 (1985) ("The Wong Sun doctrine applies as well when the fruit of the Fourth Amendment violation is a confession."); Mosby v. Senkowski, 470 F.3d 515, 520 (2d Cir. 2006) ("Evidence obtained from an unlawful search or seizure is generally subject to exclusion as 'fruit of the poisonous tree.'). When a defendant is confronted by law enforcement with incriminating evidence obtained by an illegal search and then makes admissions about that evidence, it is ordinarily obvious that there has been an exploitation of the illegality. See, e.g., United States v. Davis, 332 F.3d 1163, 1170 (9th Cir. 2003) (statements made to police suppressed as fruit of the poisonous tree where defendant questioned about weapons several hours after an illegal search during which guns were found in his gym bag); United States v. Lawson, 961 F. Supp. 2d 496, 507 (W.D.N.Y. 2013)(statements made by defendant after unlawful search suppressed); United States v. Varn, No. 97 CR. 607 (MGC), 1998 WL 382048, at *3 (S.D.N.Y. July 9, 1998) (statements

suppressed as the fruit of an illegal search because they were made immediately after unlawful "consent" search). Once a defendant thinks that he has been caught "red handed," the futility of remaining silent can be more easily exploited by law enforcement. "This is because the realization that the 'cat is out of the bag' plays a significant role in encouraging the suspect to speak." See 6 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.4(c) (5th ed. 2018) (internal quotation marks and citations omitted).

Statements made pursuant to an illegal search may be suppressed as fruit of the poisonous tree. Bailey, 743 F.3d at 341. Where there is a Fourth Amendment violation, the government bears the burden of proving a defendant's statements were given as "'an act of free will [sufficient] to purge the primary taint of the unlawful invasion.'" Kaupp v. Texas, 538 U.S. 626, 632-33 (2003) (quoting Wong Sun, 371 U.S. at 486). In determining whether the government has met its burden, courts generally consider four factors: (1) proper administration of Miranda warnings; (2) the temporal proximity of the illegal conduct to the statements; (3) intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. Id. at 633; Brown v. Illinois, 422 U.S. 590, 603-04 (1974); Mosby, 470 F.3d, at 521.

With respect to the first factor, there is no dispute that after arresting Mack and driving him back to the PSB, Officer Giancursio read Mack his Miranda rights. While this factor weighs against suppression, "[g]iving a defendant Miranda warnings [may] not break the causal chain between an illegal search and a subsequent confession." United States v. Lawson, 961 F. Supp. 2d 496, 507 (W.D.N.Y. 2013) (internal quotation marks omitted). See Guzman, 724 F. Supp. 2d at 444 ("Miranda warnings, alone and per se, cannot always make the act sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession") (quoting Kaupp, 538 U.S. at 633).

The second and third factors -- temporal proximity and existence of "intervening circumstances" -- clearly weigh in favor of suppression. The time delay between the illegal search of his person and Mack's statements regarding the gun was brief, probably less than forty-five minutes, strongly suggesting that there was no purge of the taint from the Fourth Amendment violation. See, e.g., New York v. Harris, 495 U.S. 14, 24 (1990) (one-hour delay fails to purge taint); Brown v. Illinois, 422 U.S. at 604 (two-hour delay does not purge taint). Nor were there any type of intervening circumstances to support an argument that somehow the questioning of Mack about the gun was not the direct result of the Fourth Amendment violation committed at the scene of his arrest.

United States v. Hiruko, 320 F. Supp. 2d 26, 34 (E.D.N.Y. 2004) ("The government has not even alleged an intervening event, and there was none."). See United States v. Race, No. 11-CR-6157G, 2015 WL 576171, at *25 (W.D.N.Y. Feb. 11, 2015), report and recommendation adopted, No. 11-CR-6157-FPG, 2015 WL 4678624 (W.D.N.Y. Aug. 6, 2015) (Payson, M.J.) (despite administration of Miranda warnings, statements made by defendant after illegal search were the product of the Fourth Amendment violation) (collecting cases). Here, there simply is no question that Mack's post-Miranda statements about the gun were induced by the discovery of the weapon during the illegal search of his person.

The final factor requires the Court to consider the "purpose and flagrancy of the official misconduct." Brown v. Illinois, 422 U.S. at 603-04. This factor also ties in to the government's argument that Officer Melendez's conduct is protected by the so called "good faith" doctrine. See Davis v. United States, 564 U.S. 229 (2011) (suppression of illegally obtained evidence is not appropriate "when the police act with an objectively reasonable good-faith belief that their conduct is lawful or when their conduct involves only simple, isolated negligence"). Based on the particular facts surrounding Mack's encounter with law enforcement on March 28, 2017, "a reasonably well trained officer would have known that the search was illegal in light of 'all of the circumstances.'" Herring v. United States, 555 U.S. 135, 145

(2009) (quoting United States v. Leon, 468 U.S. at 922 n.23) (internal quotation marks omitted). Thus, the government has not convinced the Court that the search of Mack was conducted in good faith. In Arizona v. Johnson, 555 U.S. 323 (2009), the Supreme Court held that to justify a pat-down of the passenger in a motor vehicle stopped for a traffic infraction "the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." Id. at 327. Officer Melendez testified that he harbored no such reasonable belief at the time he decided to pat-down Mack. Indeed, Melendez testified he did so only because it was "our procedure to pat frisk for weapons for our safety." Tr. 2 at 112-13. However, a uniform pat-frisk "policy" applied generally to passengers in a vehicle subject to a traffic stop does not comport with constitutional principles requiring individualized reasonable suspicion. See United States v. Starks, 301 F. Supp. 2d 76, 86 (D. Mass. 2004) ("neither the police nor a court may rely on a generalized risk to officer safety to justify a routine 'pat-down' of all passengers as a matter of course.") (internal quotation marks and citations omitted). See also United States v. Brock, No. 13-CR-6025, 2016 WL 3743242, at *2 (W.D.N.Y. July 13, 2016) (Siragusa, J.) ("the Court does not believe that the generalized odor of marijuana, without more, gave the police

the right to search the person of the defendant, who was the driver of the car, or the two passengers.").[2]

This Court is cognizant that traffic stops are "especially fraught with danger to police officers." Michigan v. Long, 463 U.S. 1032, 1047 (1983). But, given the well-established requirements as to the factual predicates necessary for a constitutional pat-frisk, the Court finds that the error made in frisking Mack was deliberate, flagrant, and objectively unreasonable under settled law. Therefore, the "fruit of the poisonous tree" corollary to the exclusionary rule should apply. See Herring, 555 U.S. at 144 (where the conduct in question was "sufficiently deliberate that exclusion can meaningfully deter" similar future conduct, exclusionary rule should apply); Illinois v. Krull, 480 U.S. 340, 348-49 (1987)(good faith exception to exclusionary rule should not apply "if it can be said that the law enforcement officer had knowledge, or may properly be charged with

---

[2] In Brock, Judge Siragusa noted that he was not addressing the legality of any pat frisk that was conducted prior to the search of the defendant. United States v. Brock, 2016 WL 3743242, at *1 n.1. See Norman v. State, 452 Md. 373, 156 A.3d 940, cert. denied, 138 S.Ct. 174 (Mem) (U.S. Oct. 2, 2017) (No. 16-1547) (law enforcement lacked articulable suspicion to frisk defendant, following traffic stop of vehicle in which defendant was a passenger, even though trooper detected a strong odor of marijuana emanating from the vehicle). Here, Officer Menendez's decision to remove Mack from the Sedona, frisk him for weapons and place him in the back of the patrol vehicle was made (1) without any suspicion that Mack was either armed or dangerous and (2) before Menendez noticed any smell of marijuana coming from the vehicle.

knowledge, that the search was unconstitutional under the Fourth Amendment.")(quoting United States v. Peltier, 422 U.S. 531, 542 (1975)).

**Conclusion**

For the reasons set forth above, it is my Report and Recommendation that although the weapon found on Mack is admissible at trial pursuant to the inevitable discovery doctrine, any statements the defendant made at the PSB regarding the weapon or his possession of the weapon must be suppressed as the fruit of an illegal pat frisk.

**SO ORDERED.**

JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: January 18, 2019
Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

/s/ Jonathan W. Feldman
Jonathan W. Feldman
United States Magistrate Judge

Dated: January 18, 2019
Rochester, New York

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991), cert. denied, 502 U.S. 1103 (1992); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).