

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.

SOFONZIA MACK,

Defendant.

_____

**DECISION AND ORDER**

6:17-CR-06159 EAW

## I.    BACKGROUND

Defendant Sofonzia Mack ("Defendant") stands accused by way of an Indictment returned on November 9, 2017, with possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) (Count 1), possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 2), felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 3), and possession of a firearm with removed, altered and obliterated serial number in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B) (Count 4).  (Dkt. 19). The Court referred pretrial matters to United States Magistrate Judge Jonathan W. Feldman pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B).  (Dkt. 20).

On January 5, 2018, Defendant filed a motion to suppress evidence and statements obtained on March 28, 2017, when he was arrested by members of the Rochester Police Department ("RPD").  (Dkt. 24 at 4-13).  Defendant's arrest resulted from a traffic stop and subsequent search of a Kia Sedona minivan by RPD officers Samuel Giancursio and Eric Melendez.  (*Id.* at 4-5).  Defendant was travelling in the minivan as a passenger.  (*Id.*).

The Government opposed the motion to suppress, filing papers in opposition on January 19, 2018. (Dkt. 25).

On April 3, 2018, an evidentiary hearing was conducted by Judge Feldman, and continued on May 2, 2018, and Officer Giancursio, Officer Melendez, and Defendant testified. (Dkt. 31; Dkt. 32).[1] Various exhibits were admitted into evidence, including video from Officers Giancursio's and Melendez's body cameras ("body cam video"). The parties submitted post-hearing submissions. (Dkt. 38; Dkt. 41; Dkt. 46). On November 29, 2018, Judge Feldman issued a thorough Report and Recommendation (Dkt. 48), familiarity with which is assumed for purposes of this Decision and Order.

With respect to Defendant's motion to suppress evidence, Judge Feldman concluded: (1) Officer Melendez's pat-frisk search of Defendant violated the Fourth Amendment (*id.* at 17); (2) the officers had probable cause to search the minivan due to the smell of burnt marijuana (*id.* at 18-19); and (3) the firearm discovered during the improper pat-frisk is admissible because it would have been inevitably discovered during Defendant's arrest after the discovery of a bag containing fresh marijuana packaged in vials on the floor of the minivan directly in front of where Defendant was seated (*id.* at 20). Thus, Judge Feldman recommended denying Defendant's motion to suppress the contraband found in the minivan and the weapon found on Defendant's person. (*Id.* at 21).

---

[1] The transcript of the hearing conducted on April 3, 2018, is filed at Docket 31, and the transcript of the hearing conducted on May 2, 2018, is filed at Docket 32. The transcripts are consecutively paginated, and this Decision and Order will cite to the corresponding page(s) from the transcripts as "T" in this Decision and Order.

With respect to Defendant's motion to suppress any statements made at the scene of the traffic stop, Judge Feldman concluded: (1) any statements made by Defendant prior to being placed in handcuffs, are not subject to suppression (*id.* at 21); (2) the post-arrest statements made by Defendant related to the narcotics and currency found in the minivan, as detailed in footnote seven of the Government's post-hearing brief (*see* Dkt. 38 at 23 n.7), were made spontaneously in an effort to free the driver of the minivan (Amina Marie Newsome) and "not in response to any questioning or conduct by law enforcement that would be reasonably likely to elicit an incriminating response" (Dkt. 48 at 23); (3) statements by Defendant at the scene of the traffic stop, if any, related to the firearm, must be suppressed notwithstanding the admission of the evidence pursuant to the inevitable discovery doctrine (*id.* at 23 n.5); and (4) Defendant's statement that he had "weed" in his bag, made in response to Officer Melendez's questions as he was physically seizing Defendant, must be suppressed (*id.* at 24 n.6). Thus, Judge Feldman also recommended denying Defendant's motion to suppress the statements made at the scene of the traffic stop, except for any statements about the firearm and Defendant's statement that he had "weed" in his bag. (*Id.* at 24 & n.6).

With respect to Defendant's post-arrest statements made at the Public Safety Building ("PSB"), Judge Feldman rejected Defendant's arguments that his statements were involuntary because of "Giancursio's outrageous and coercive conduct during the interview" and Defendant's mental health issues. (*Id.* at 25-28). However, Judge Feldman credited Defendant's testimony that he requested an attorney after the completed statement had been drafted by Officer Giancursio, but before he signed either page. (*Id.* at 29-30).

Thus, Judge Feldman recommended that Defendant's signatures on pages one and two of the statement be suppressed. (*Id.* at 30).

Judge Feldman also requested additional briefing from the parties, as outlined in his Report and Recommendation of November 29, 2018, as to whether, based on *United States v. Santillan*, 902 F.3d 49 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 1467 (2019), Defendant's post-arrest statements at the PSB concerning the firearm should be suppressed. (Dkt. 48 at 30-31). Both parties filed supplemental briefing in accordance with Judge Feldman's directions. (Dkt. 49; Dkt. 50). On January 18, 2019, Judge Feldman issued a Report and Recommendation that Defendant's post-arrest statements at the PSB regarding the weapon or his possession of the weapon must be suppressed as the fruit of an illegal pat-frisk. (Dkt. 52).

After various extensions of time (Dkt. 54; Dkt. 55; Dkt. 56; Dkt. 57), the parties filed objections to the Reports and Recommendations (Dkt. 58; Dkt. 59), as well as responses to each party's respective objections (Dkt. 61; Dkt. 62). Oral argument was held before the undersigned on April 10, 2019, and the Court took the matter under advisement. (Dkt. 65).

## II.    STANDARD OF REVIEW

A district court reviews any specific objections to a report and recommendation on a dispositive issue, such as a motion to suppress, under a *de novo* standard. Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). To trigger the *de novo* review standard,

objections to a report and recommendation "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).

In conducting its *de novo* review, the district court must give appropriate deference to the credibility determinations made by the magistrate judge who conducted an evidentiary hearing and observed the witness testimony. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980) (district court is not required to rehear witness testimony when accepting a magistrate judge's credibility findings); *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999) (holding that "without an evidentiary hearing, the District Court could not reject the Magistrate Judge's proposed credibility finding"); *United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013) ("The Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings."); *United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009) ("The district court, however, may not reject the magistrate judge's credibility findings without conducting an evidentiary hearing at which the district court has the opportunity to observe and evaluate witness credibility in the first instance.").

III. **DEFENDANT'S OBJECTIONS**

A. Probable Cause to Search the Minivan

Defendant objects to Judge Feldman's conclusion (*see* Dkt. 48 at 18-21) that the police had probable cause to search the minivan because of the smell of burnt marijuana. Defendant contends that while the driver of the minivan (Ms. Newsome) appears nervous

in the video of the traffic stop, Defendant appears calm—contrary to the testimony of

Officers Melendez and Giancursio.[2] (Dkt. 58 at 11-12). Moreover, Defendant contends

that Officers Melendez and Giancursio gave conflicting accounts about the potency of any

marijuana that was smelled, and although they suspected that the minivan contained burnt

marijuana, none was found.[3] (*Id.* at 14). Thus, Defendant contends that the officers'

account of smelling burnt marijuana is not credible, thus vitiating the basis for the probable

cause to search the minivan. (*Id.* at 15). At oral argument, defense counsel summed up

the issue by explaining that the crux of the dispute is whether there actually was a smell of

marijuana.

The Government responds that the undersigned should accept Judge Feldman's

credibility determination that the officers smelled marijuana. (Dkt. 62 at 8-12). In addition

to arguing that the officers testified credibly, the Government points out that their

testimony was corroborated by Ms. Newsome's statement that somebody may have been

smoking marijuana. (*Id.* at 10). Moreover, the Government argues that the officers'

testimony provided facts that "were beneficial to the defense arguments," such as

---

[2] To be clear, Officer Giancursio testified that Defendant was initially nervous and evasive (*see, e.g.*, T at 17, 68), but Officer Melendez testified that Defendant "was cooperative" and "seemed normal." (T at 109-10).

[3] The record establishes that no burnt marijuana was seized and taken into evidence. The record is not clear as to whether there was a "burnt blunt" observed in the ashtray of the minivan by Officer Giancursio. (*See* T at 57-58). For purposes of this Decision and Order, the Court assumes that there was no burnt marijuana discovered upon the search of the minivan.

acknowledging that Defendant was cooperative, thus further supporting their credibility. (*Id.*).

The Court has reviewed the transcripts of the evidentiary hearing before Judge Feldman, as well as the body cam video recording each officer's perspective of the traffic stop and the other exhibits admitted during the hearing. The Court concludes that there is no basis to disturb Judge Feldman's credibility finding that Officers Giancursio and Melendez both smelled marijuana, thus justifying the search of the minivan.

Officer Giancursio testified that he "noticed the immediate smell of marijuana" that was coming from inside the minivan upon approaching the driver's side of the minivan, which had the window lowered before Office Giancursio even arrived. (T at 15, 19). By contrast, Officer Melendez approached the passenger side of the minivan, but that window was either closed or only partially open during his initial encounter. (T at 110-11). Thus, although Officer Melendez testified that he did not initially small marijuana, Officer Giancursio had more of an opportunity to smell the contents of the minivan based upon the open driver's side window. This is borne out by a review of the body cam video.

Moreover, in response to Officer Giancursio's questioning, Ms. Newsom acknowledged that someone may have been smoking marijuana in the minivan. (T at 23-24). The fact that fresh marijuana—and not burnt marijuana—was discovered upon the search of the minivan is not dispositive and does not negate the credibility findings made by Judge Feldman with respect to the officers' testimony. For these reasons, and for all the reasons discussed in further detail in the Report and Recommendation, the Court adopts

Judge Feldman's findings that the officers smelled burnt marijuana, thus justifying the search of the minivan.

B.     Doctrine of Inevitable Discovery

Defendant focuses on Officer Melendez telling Defendant that he "didn't care" about the marijuana and the disparate treatment of Ms. Newsome to support his argument that there was never any intent by the officers to arrest Defendant for marijuana, and therefore the doctrine of inevitable discovery cannot salvage the improper pat-frisk. (Dkt. 58 at 15-19). Defendant also contends that Officer Giancursio's focus on the firearm when he took Defendant's statement at the PSB demonstrates that marijuana was not his concern. (*Id.* at 17). Moreover, without the suppressed statement by Defendant acknowledging that the marijuana in the minivan belonged to him, Defendant contends there would have been no basis to arrest Defendant. (*Id.* at 18).

Setting aside the discovery of the firearm and Defendant's statement acknowledging that the marijuana in the minivan belonged to him, the Court agrees with Judge Feldman's conclusion that probable cause to arrest Defendant would have existed after the search of the minivan and discovery of the marijuana, and therefore the firearm on Defendant's person would have been inevitably discovered during that arrest. (Dkt. 48 at 20).

The officers searched the minivan because of the odor of marijuana (*see* T at 65), so regardless of what may have been said to either occupant about not caring about the marijuana, the search itself contradicts any such statements. In addition, any such statements about not caring about marijuana were directed to what was perceived to be a

- 8 -

burnt blunt in the ashtray of the minivan, as opposed to the subsequently discovered vials of fresh marijuana that appear packaged for resale. (*See* Govt. Ex. 7 & 8).

Officer Giancursio testified that based on the discovery of the fresh marijuana upon the search of the minivan, Defendant would have been arrested for possession of marijuana and searched subsequent to that arrest. (T at 35). Moreover, Officer Giancursio testified that when he initially approached the minivan after the traffic stop, he observed Defendant in possession of the bag that was subsequently discovered to contain marijuana. (*Id.* at 31). In addition, the marijuana was discovered on the front passenger floor board, in the area where Defendant had been sitting. (*Id.* at 30). Similarly, Officer Melendez testified that Defendant would have been searched after the search of the minivan because he would have been placed under arrest for the marijuana that was discovered. (T at 136). Finally, the concentration by Officer Giancursio on the firearm during the interview at the PSB does not alter the analysis. As Officer Giancursio acknowledged, the focus of the investigation shifted once the firearm was discovered. (T at 57).

For these reasons and for the reasons set forth in more detail by Judge Feldman, the Court finds that the Government met its burden to establish that the firearm would have been inevitably discovered upon Defendant's arrest for marijuana possession, and thus it should not be suppressed even though it was discovered during an unconstitutional pat-frisk.

## IV.  THE GOVERNMENT'S OBJECTIONS

Judge Feldman concluded that Defendant's post-arrest statements concerning the firearm must be suppressed because, while the doctrine of inevitable discovery warrants

denial of suppression of the actual firearm, the unconstitutional search poisoned the subsequent statements. (Dkt. 52). The Government objects to this recommendation, arguing that "[t]he smell of marijuana, Newsome's erratic operation of the Sedona and heightened agitation, as well as the decision by Officer Melendez and Officer Giancursio to search the Sedona because of the marijuana smell, . . . show that the pat-frisk was reasonable under the circumstances." (Dkt. 59 at 11). According to the Government, at most, the pat-frisk was conducted prematurely "under the good-faith belief that the police department procedures permitted such a pat-frisk before placing a person in the rear of a patrol car." (*Id.* at 12).

One of the problems with the Government's argument is that it is contradicted by the testimony at the evidentiary hearing. Officer Melendez testified that he performed the pat-frisk on Defendant, not because of any concern that Defendant was armed and dangerous, but rather simply because "it was proper protocol to search him for weapons." (T at 136). Officer Melendez testified that he did not believe Defendant was dangerous or that he possessed a firearm. (T at 124). Similarly, Officer Giancursio testified that he did not feel threatened by Defendant at the traffic stop. (T at 67).

As thoroughly discussed by Judge Feldman in his Reports and Recommendations, over a decade ago the Supreme Court made clear in *Arizona v. Johnson*, 555 U.S. 323 (2009), that to justify a pat-frisk of a passenger in a motor vehicle "the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Id.* at 327. Officer Melendez and Officer Giancursio candidly testified that they did not harbor

any such reasonable suspicion that Defendant was armed and dangerous. Instead the pat-frisk was performed as a matter of standard protocol.

The Government focuses its objections on a good faith argument, contending that no deterrent value would be served by suppression. (Dkt. 59 at 12-15). Under the circumstances of this case, the Government has failed to meet its burden to establish applicability of the good faith doctrine. *See United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011) ("The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance. . . ."). This Court agrees with Judge Feldman's conclusions that a reasonably well-trained officer would have known that without a reasonable suspicion that Defendant was armed and dangerous, the pat-frisk was illegal. The Supreme Court precedent is clear and well-established that to conduct a pat-frisk of Defendant, Officer Melendez needed to harbor reasonable suspicion that Defendant was armed and dangerous, and Officer Melendez candidly admitted that he held no such beliefs. According to the officers' own testimony, this was not an isolated incident of negligence but rather standard operating procedure. Under the circumstances, excluding this evidence should result in appreciable deterrence of future Fourth Amendment violations and the benefits of deterrence outweigh the costs of suppressing the evidence. *See Herring v. United States*, 555 U.S. 135, 140-141 (2009).

Finally, the Government's argument that the statements should not be suppressed because the statements would have inevitably been made after Defendant's arrest and discovery of the firearm (Dkt. 59 at 12 n.3), ignores the principles articulated in *United States v. Santillan*, 902 F.3d 49, 59-60 (2d Cir. 2018) and *United States v. Bailey*, 743 F.3d

322, 341 (2d Cir. 2014). Judge Feldman appropriately concluded that the Government did not meet its burden of proving that the statements were sufficiently attenuated to remove the taint from the unlawful search. (Dkt. 52 at 2-8). The fact that the evidence of the firearm is saved by the doctrine of inevitable discovery, does not similarly save the statements made concerning the firearm. *Santillan*, 902 F.3d at 59-60; *see United States v. Vasquez De Reyes*, 149 F.3d 192, 195-96 (3d Cir. 1998) (holding statement should not have been admitted under the inevitable discovery doctrine because unlike "[a] tangible object [which] is hard evidence, and absent its removal will remain where left until discovered. . . . a statement not yet made is, by its very nature, evanescent and ephemeral. Should the conditions under which it was made change, even but a little, there could be no assurance the statement would be the same"). The Government has cited no legal authority applying the doctrine of inevitable discovery to statements under these circumstances, and in any event, it has failed to establish that the statements "ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984); *see United States v. Rodriguez*, No. 3:06-cr-57 (JCH), 2006 WL 2860633, at *11 (D. Conn. Oct. 4, 2006) (holding "the government failed to satisfy its burden of proving that [the defendant] would have made the same statements" pursuant to the inevitable discovery doctrine, especially because "the statement at issue [was] made by a non-law enforcement person, for it is harder to determine what such an individual might have said or done during a police investigation" (citing 6 Wayne R. LaFave, *Search and Seizure* § 11.4(a), at 282 (4th ed. 2004))), *rev'd on other grounds, United States v. Delossantos*, 536 F.3d 155 (2d Cir. 2008) ("The main question we must resolve is whether [the defendant] was legally

- 12 -

arrested. If he was not, the evidence derived from his post-arrest statements and the consensual search of his apartment and car must be suppressed as the fruit of an unlawful arrest.").

## V.   CONCLUSION

For the foregoing reasons, as well as the reasons set forth in more detail in the Reports and Recommendations, the Court accepts and adopts the Reports and Recommendations (Dkt. 48; Dkt. 52) in their entirety, and Defendant's motion to suppress evidence and statements (Dkt. 24) is denied in part and granted in part.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: June 25, 2019
         Rochester, New York